UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CREATIVE DYNAMICS, INC. and ) <br> BEIJING ABACE BIOLOGY CO., LTD., ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> CHUNHONG ZHANG, MTOZ ) <br> BIOLABS, INC, ABC CORP. 1 d/b/a Ig- ) <br> Clue and IgClue, ABC CORPS. 2-10 and ) <br> JOHN DOES 1-10, ) <br> ) <br> Defendants. ) | Case No.1:20-CV-11711-DPW <br><br> Judge Woodlock |

**DEFENDANT MtoZ BIOLABS, INC.'S MEMORANDUM**
**IN SUPPORT OF MOTION TO DISMISS OR STAY**

**I.   INTRODUCTION**

This case is, in essence, a non-compete action to suppress competition in Massachusetts resting on unenforceable contracts based on Chinese law, executed in China, between Plaintiff Beijing Abace Biology Co., LTD. ("Abace"), a Chinese company, and a Chinese national, Defendant Chunhong Zhang ("Dr. Zhang"). In 2015, Dr. Zhang, a newly minted Ph.D., began work for Abace in Chengdu, Sichuan, China, as an entry-level employee in Abace's Creative Proteomics Department. Dr. Zhang was required to sign several employment-related documents intended to restrict her employment.[1] One of these documents declines to identify either a time

---

[1] Plaintiffs make reference to those documents in their Complaint, but did not attach them. For convenience, MtoZ attaches them to this Motion. Under Rule 12 of the Federal Rules of Civil Procedure, the Court can consider these documents in ruling on this Motion. *See Miller Inv. Tr. v. Morgan Stanley & Co., LLC*, 308 F. Supp. 3d 411, 425 (D. Mass. 2018); *McGee v. Andre Benjamin 3000*, No. 08-11818-DPW, 2012 U.S. Dist. LEXIS 37210, at *13 (D. Mass. March 20, 2012). The translations of relevant parts were not performed by a professional translator.

period during which Dr. Zhang was not to compete or a reasonable geographic area. Another of these documents purports to prevent Dr. Zhang from working in a position similar to that she held at Abace in China *for a period of five years*. Plaintiffs rely on these extraordinary documents not only to pursue claims against Dr. Zhang, who has not yet been served in this case and thus is not a party to it, but also against MtoZ, a Massachusetts start-up doing business in the same general field as Plaintiffs.

In addition to the non-compete claims against Dr. Zhang, Plaintiffs have asserted various causes of action sounding in the tort of trade secret misappropriation against her and MtoZ. These claims largely rest on naked assertions of misappropriation regarding nebulous "Confidential Information" and various allegations based on "information and belief." None of these allegations has any merit but appear to be brought chiefly for the purpose of intimidating the Defendants into not competing against the Plaintiffs: the Defendants are confronted with the specter of daunting litigation costs they can ill afford to pay.[2] In any event, Plaintiffs' misappropriation-based causes of action are fatally deficient due in part to Plaintiffs' failure to identify the supposed trade secrets the Defendants have allegedly misappropriated. For these and the other reasons set forth below, the Court should dismiss Plaintiffs' claims against MtoZ.

In the alternative, MtoZ moves the Court to stay this case in deference to proceedings Abace commenced against Dr. Zhang in the Peoples Republic of China. Though Abace instituted that Chinese proceeding after filing the instant action and it does not include MtoZ, the

---

[2] This is not the first time these Plaintiffs have initiated an action in the United States to suppress competition. In 2018, they commenced an action in the U.S. District Court for the Central District of California asserting the same sort of claims against four Chinese national former employees and several start-up companies located in California and New Jersey. In August, the court denied Plaintiffs' renewed motion for default judgment. *See Beijing Abace Biotechnology Co. v. ADV Biolabs, Inc.*, No. CV 18-3599 FMO (ASx), 2020 U.S. Dist. LEXIS 159403 (C.D. Cal. Aug. 24, 2020).

resolution of the issues presented to the Chinese tribunal between Chinese citizens interpreting Chinese contracts purporting to be subject to Chinese law could have considerable bearing on this case. Accordingly, as a matter of judicial economy, the Court may wish to stay this action until the Chinese case has concluded.

**II.     FACTS**

The facts set forth below are, for the most part, based on allegations presented in the Complaint and information from documents to which the Complaint makes reference. MtoZ does not ascribe to all these facts, and with respect to many of them simply has no knowledge of their truth. But MtoZ understands that at this stage of the proceedings the Court must accept as true Plaintiffs' well-pleaded facts. *See Saccoccia v. United States*, 955 F.3d 171, 172 (1st Cir. 2020).

Plaintiff Abace is a Chinese company with its principal place of business in Beijing, the Peoples Republic of China ("China"). (Complaint, ¶3). Abace states that it is in the business of biology genomics services. (Complaint, ¶1). Specifically, Abace explains it is a service provider in gene sequencing, microarray analysis, library construction, and genotyping. (Complaint, ¶¶13-14, 67, 74, 79, 85, 89). Plaintiff Creative Dynamics, Inc. ("Creative Dynamics") is a New York corporation. (Complaint, ¶2). Plaintiffs state that Creative Dynamics is affiliated with Abace though without identifying the corporate relationships. (Complaint, ¶¶1, 12). Plaintiffs assert that Abace and Creative Dynamics work hand in hand to provide world-leading biology genomics services, with Creative Dynamics based in New York and Abace based in China. (Complaint, ¶¶1-3, 12).

In December 2014, Dr. Zhang began work with Abace in China. (Complaint, ¶16). Dr. Zhang was mainly responsible for assisting in responses to customer inquiries during her employment with Abace. (Complaint, ¶17). On December 25, 2014, and then again on

November 2, 2016, Abace required Dr. Zhang to sign "Confidentiality and Non-Competition Agreements."[3] (Complaint, ¶19) (referred to hereafter as "the Agreements"). They include an unidentified period of time proscribing Dr. Zhang from competing against Abace. They are also without geographical limits.

> Specifically, Article 3.2 of the November 2, 2016 agreement provides, in relevant part:
>
> 1. Party B shall not, directly or indirectly, engage in or assist others to engage in the same or similar competitive business as Party A within _____ months of termination (until the next day of _____ month after termination).
>
> 2. Party B shall not hold a full or part-time job in an organization with similar business and competitive relationship with Party A or accept the employment of an individual with similar business and competitive relationship with Party A within _____ months from the date of termination (until the next day of _____ month after termination).

Exhibits A, Article 3.2 (spaces in originals).

Subsequently, on January 9, 2016, Abace insisted that Dr. Zhang sign another document, referred to as the "Cadre Agreement."[4] In it Abace seeks to restrict Dr. Zhang from engaging in any competitive business for a period of *five years*. (Complaint, ¶¶29-33) (emphasis supplied).

Article 4.1 of this document provides, in relevant part:

> All senior cadres (The primary and secondary head of each Division, meaning those leaders with the position higher than the combat team lead) must strictly abide by the principle of non-competition, and may not engage in any competitive relationships with CD Inc. or reemployed by any companies with competitive relationship or have a business conflict with CD, Inc. for *five years* following their termination, without written consent of CD, Inc.

Exhibit B, Article 4.1 (emphasis supplied).

---

[3] MtoZ does not have a copy of the December 25, 2014 agreement and therefore only attaches to the Motion the November 2, 2016 agreement, as Exhibit A.

[4] Abace insisted Dr. Zhang sign two Cadre Agreements during her employment, one on January 9, 2016, as alleged in the Complaint, and again on November 2, 2016, which Plaintiffs do not allege.

4

In January 2017, Dr. Zhang became ill and shortly thereafter left her position with Abace. (Complaint, ¶¶36-37). Later that year she moved to Massachusetts to join her husband, also a Chinese national, who was visiting the United States as an academic scholar. In September 2017, Dr. Zhang formed MtoZ. The purpose of MtoZ is to establish a contract research organization providing advanced proteomics, metabolomics, proteomics and metabolomics bioinformatics, and biopharmaceutical analysis services to researchers in the biochemistry, biotechnology, and biopharmaceutical fields.[5]

Since commencing this action, Abace filed an arbitration proceeding and later a lawsuit against Dr. Zhang in the Peoples Court in Beijing on or about October 19, 2020 ("the China case"), alleging breach of the employment contracts identified above. It is MtoZ's understanding that the allegations against Dr. Zhang in that matter are identical or virtually identical to those Plaintiffs have asserted in the instant case against Dr. Zhang. MtoZ is advised that Dr. Zhang has been served with process in that case and that Abace has submitted evidence in the proceedings. MtoZ is not a party to the China case.

### III.   STANDARD OF REVIEW

The law governing pleading requirements in the District of Massachusetts is well settled. In order to satisfy them, a plaintiff must set forth factual allegations which, if true, demonstrate that the plaintiff's claims are plausible. *See Gilbert v. City of Chicopee*, 915 F.3d 74, 80 (1st Cir. 2019); *Miller Inv. Tr. v. Morgan Stanley & Co., LLC*, 308 F. Supp. 3d 411, 425 (D. Mass. 2018). Failure to meet this pleading predicate subjects a plaintiff's claims to dismissal.

As this Court explained in *Bruno Int'l Ltd. v. Vicor Corp.*, No. 14-10037-DPW, 2015 U.S. Dist. LEXIS 123556, *9 (D. Mass. Sept. 16, 2015), "[t]o survive a motion to dismiss

---

[5] In 2020, MtoZ suspended its business largely due to the Covid pandemic.

pursuant to Fed. R. Civ. P. 12(b)(6), 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court further explained that where the alleged facts "do not permit the court to infer more than the mere possibility of misconduct," the complaint fails to demonstrate "the pleader is entitled to relief." *Id.*, quoting *Maldonado v. Fontanes*, 568 F.3d 263, 269 (1st Cir. 2009) (internal quotations omitted). Though the court must "accept as true all well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiffs," *Gargano v. Liberty Int'l Underwriters, Inc.*, 572 F.3d 45, 48 (1st Cir. 2009), the court is not required to give deference to vague or conclusory allegations. *Bruno,* 2015 U.S. Dist. LEXIS 123556, at *9. *See also SEC v. Tambone*, 597 F.3d 436, 441 (1st Cir. 2010) (en banc) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). As to allegations advanced on "information and belief," they may be considered—but only to the extent that the information is exclusively in the hands of the defendant, *see Menard v. CSX Transp., Inc.*, 698 F.3d 40, 45 (1st Cir. 2012), which is not the situation here.

### IV.   ARGUMENT

Plaintiffs set forth nine separate causes of action in the Complaint. The First Count and the Second Count are presented against Dr. Zhang alone. She has not been served with process in this case and therefore does not respond to the allegations in the Complaint. The remainder of the counts assert claims against all the Defendants. Insofar as Defendant ABC Corp./IgClue has not been properly served,[6] the arguments below are only those of Defendant MtoZ.

---

[6] The Plaintiffs identify a doe corporate defendant, "ABC Corp." which, Plaintiffs allege, "markets itself as IgClue." Complaint, ¶6. According to the Court's docket, Plaintiffs attempted to serve process on it through CT Corp. listing the same address as MtoZ. However. CT Corp. is not the registered agent for that defendant and that defendant is not and has not been a Massachusetts entity, and was not a part of MtoZ. Thus, service has not been properly effected as

6

### A. Plaintiffs' Breach Of Contract Claim (Non-Compete Claim) Is Only Against Dr. Zhang

Plaintiffs' non-compete claim set forth in their First Count is asserted only against Dr. Zhang. MtoZ does not move for dismissal of this claim.

### B. Plaintiffs' Breach of Fiduciary Duty Is Only Against Zhang

Likewise, Plaintiffs' Second Count for a breach of fiduciary duty is asserted only against Dr. Zhang. MtoZ does not move for dismissal of this claim either.

### C. Plaintiffs' Misappropriation Of Trade Secrets Claim Against MtoZ Fails As A Matter Of Law

In their Third Count, Plaintiffs contend that MtoZ misappropriated Plaintiffs' trade secrets. Under Massachusetts law, in order to prevail on its misappropriation of trade secrets claim against MtoZ,[7] Plaintiffs must allege: "1) the information is a trade secret; 2) the plaintiff[s] took reasonable steps to preserve the secrecy of the information; and 3) [MtoZ] used improper means, in breach of a confidential relationship, to acquire and use the trade secret." *Incase Inc. v. Timex Corp.*, 488 F.3d 46, 52 (1st Cir. 2007) (emphasis supplied), citing *Data Gen. Corp.* v. *Grumman Sys. Support Corp.*, 36 F.3d 1147, 1165 (1st Cir. 1994). Because Plaintiffs allegations do not meet this test, this Count must fail.

To begin, Plaintiffs decline to describe when the alleged misappropriation took place. The timing is important given the recent changes in Massachusetts law on this subject. The Massachusetts Uniform Trade Secret Act ("MUTSA"), Mass. G. L. c. 93, §42, applies if the

---

to it. *See Stratton v. City of Boston*, 731 F. Supp. 42, 45 (D. Mass. 1989) (suggesting that a defendant must be sufficiently identified to permit service of process).

[7] The earliest MtoZ could have possibly misappropriated Plaintiffs' trade secrets was in September 2017, when it was formed. At that time the predecessor to MUTSA functioned, Mass. G. L. c. 93, §42 (2017). *See Allscripts Healthcare, LLC.v. DR/Decision Res., LLC.*, 386 F. Supp. 3d 89, 95 n.3 (D. Mass. 2019).

misappropriation occurred after October 1, 2018; if before, it does not. *See Amgen USA, Inc. v. Karyopharm Therapeutics, Inc.*, No. SUCV2018-03970-BLS1, 2019 Mass. Super. LEXIS 397, *6 (Suffolk June 12, 2019). Given that MtoZ was not formed until September 27, 2017, it seems likely that the allegations Plaintiffs set forth against MtoZ deal with conduct governed by MUTSA. Assuming that is accurate, Plaintiffs allegations of misappropriation against MtoZ are clearly deficient. Plaintiffs do not identify with any degree of specificity the trade secrets MtoZ allegedly misappropriated, contrary to the requirements set forth in §42(D)(b):

> (b) In an action under sections 42 to 42G, inclusive, in alleging trade secrets misappropriation a party must state with reasonable particularity the circumstances thereof, including the nature of the trade secrets and the basis for their protection. Before commencing discovery relating to an alleged trade secret, the party alleging misappropriation shall identify the trade secret with sufficient particularity under the circumstances of the case to allow the court to determine the appropriate parameters of discovery and to enable reasonably other parties to prepare their defense.

Mass. G. L. c. 93, §42(D)(b).

Though courts have generally held that it is not necessary for plaintiffs to go into exhaustive detail identifying the purportedly purloined trade secrets, plaintiffs must nonetheless provide a meaningful description of the trade secrets and how they give value to the plaintiff in order to proceed with a misappropriation claim. On this point §42(D)(b) is consonant with earlier Massachusetts law. S*ee Ferring Pharms., Inc. v. Braintree Labs., Inc.*, 38 F. Supp. 3d 169, 175 (D. Mass. 2014), citing *Sutra, Inc. v. Iceland Express EHF,* No. 04-13360-DPW, 2008 U.S. Dist. LEXIS 52849, *9-10 (D. Mass. July 10, 2008) ("description far too open textured to meet the test for an identifiable trade secret"). Without such information, a defendant has no reasonable idea as to what it is accused of taking. It is not fair to require a defendant in that instance to have to suffer the costs of discovery to identify this basic fact.

Here, Plaintiffs allege on "information and belief" that MtoZ misappropriated their "Confidential Information." (Complaint, ¶¶ 65-66, 89, 91). In putting some context on what that means, Plaintiffs refer to Confidentiality and Non-Competition Agreements—not attached to the Complaint—that employ the term "Business Secrets" to cover an extraordinarily broad range of "any technical or operational information which are unknown to the public and which may generate economic benefit for [Abace] and any/or any Third Party...." (Complaint, ¶ 26). (The November 2, 2016 agreement to which Plaintiffs refer is attached as Exhibits A.) Plaintiffs then contend first, upon information and belief, that "MtoZ ... acquired Confidential Information that Plaintiffs own and protect with knowledge of Dr. Zhang's contractual obligations not to disclose such information to any third party or use it for her own use or benefit." (Complaint, ¶66). But even assuming for purposes of argument that the Confidential Information actually constituted trade secrets, simply acquiring such information is not actionable. *See EchoMail, Inc. v. Am. Exp. Co.*, 378 F. Supp. 2d 1, 2-3 (D. Mass. 2005) (court held that defendant must "actually use[ ] the trade secrets" in order to be liable). So that allegation cannot support Plaintiffs' misappropriation claim.

Plaintiffs come closer to the mark when they state that "Defendants misappropriated Plaintiffs' Confidential Information and trade secrets[8] by using Plaintiffs' Confidential Information to provide the similar gene sequencing service in a short period of time..." (Complaint, ¶89). At least there Plaintiffs assert that Defendants, which presumably includes MtoZ, actually used Plaintiffs' Confidential Information. But the misappropriation claim still fails for the simple reason that Plaintiffs do not identify what Confidential Information MtoZ

---

[8] It is curious that Plaintiffs, who repeatedly contend their "Business Secrets" are their "Confidential Information" that give rise to their misappropriation claims, separately make reference to unidentified and undefined "trade secrets" here.

9

actually did *use*. Because Plaintiffs too grandly define their trade secrets or "Confidential Information" to include virtually every aspect of their business, the concept becomes meaningless. *See Sutra*, 2008 U.S. Dist. LEXIS 52849, *9-*10. In short. MtoZ is left to ask, exactly what trade secrets is it accused of using to set up this sequencing service? MtoZ should not have to guess. Plaintiffs' broad assertion of trade secret misappropriation thus does not meet basic pleading requirements and should be dismissed. *Ferring Pharms.*, 38 F. Supp.3d at 175.

### D.   Plaintiffs' Unfair Competition Claim Against MtoZ Fails As A Matter Of Law

Plaintiffs' Fourth Count for unfair competition against MtoZ fails as a matter of law for two reasons. First, Plaintiffs do not allege consumer confusion. Second, the unfair competition claim, as pled, is preempted by or duplicative of the trade secret misappropriation claim.

With respect to this Count, Plaintiffs do not make any allegations regarding any consumer confusion, which is the "gravamen" of an unfair competition claim. *Open Software Found., Inc. v. U.S. Fid. & Guar Co.*, 307 F.3d 11, 17 (1st Cir. 2002). In order to proceed with such a claim under Massachusetts law, Plaintiffs must allege facts that consumers were confused as to the source of the goods or services. S*ee Datacomm Interface, Inc. v. Computerworld, Inc.,* 396 Mass. 760, 769 (1986). This Court has, on multiple occasions, dismissed unjust competition claims for failure to allege consumer confusion. *See Pegasystems, Inc. v. Appian Corp.*, No. 19-11461-PES, 424 F. Supp. 3d 214, 225-26 (D. Mass. 2019); *Scansoft, Inc. v. Voice Signal Techs., Inc.*, No. 04-CV-10353-PBS, 2004 U.S. Dist. LEXIS 31348, at *12-*13 (D. Mass. Dec. 28, 2014); *American Tel. & Tel. Co. v. IMR Capital Corp.*, 888 F. Supp. 221, 246-247 (D. Mass. 1995). Scouring the Complaint, there is no allegation that MtoZ passes itself off as Plaintiffs. Nor is there an allegation that consumers have mistakenly associated MtoZ's services with those

10

of Plaintiffs'. Failure to allege such confusion is fatal to this claim. Following *Pegasystems*, *Scansoft*, and *American Tel. & Tel.,* the Court should dismiss Count IV.

Alternatively, to the extent Plaintiffs allege that the unfair competition count rests on misappropriation of Plaintiffs' "Confidential Information," the claim is preempted by, or is duplicative of Plaintiffs' trade secret misappropriation claim. *See Uni-Systems, LLC. v U.S. Tennis Ass'n.,* 350 F. Supp. 3d 143, 179 (E.D.N.Y. 2018) (dismissing an unfair competition claim because it is based on the same allegations as a claim for misappropriation of trade secrets); *Cenveo Corp. v. Southern Graphic Sys.*, 784 F. Supp. 2d 1130, 1142 (D. Minn. Mar. 25, 2011) (finding that where a plaintiff bases its claim of unfair competition on the same underlying factual allegations as its other independent claims, the unfair competition must be dismissed).. *See also Brown & Brown, Inc. v. Cola*, 745 F. Supp. 2d 588, 624 (E.D. Pa. 2010); *Quintel Tech. Ltd. v. Huawei Techs. US, Inc.*, 4:15-CV-00307-GHD-CMC, 2016 U.S. Dist. LEXIS 132562, at *41-42 (E. D. Tex. Sept. 27, 2016). Here, Plaintiffs allege that their "Confidential Information constitutes a trade secret." (Complaint, ¶119). Plaintiffs essentially accuse MtoZ of using their "Confidential Information" under the trade secret claim, and repackage the same allegations under the unfair competition claim. (Complaint, ¶86-97). As the unfair competition claim relies on the alleged misappropriation of trade secret, it is duplicative and preempted.

E.   **Plaintiffs' Unjust Enrichment Claim Against MtoZ Fails As A Matter Of Law**

Plaintiffs' Fifth Count for unjust enrichment against MtoZ is insufficient for the following reasons. First, Plaintiffs do not allege or set forth facts supporting the proposition that they conferred benefits on MtoZ. Second, as with the unfair competition claim, this claim is preempted by or duplicative of the trade secret claim. Third, a claim for unjust enrichment is an equitable remedy and is only proper when there exists no adequate remedy at law.

Massachusetts law makes clear that in order to prevail on unjust enrichment, a plaintiff must set forth the following elements: (1) a benefit conferred upon the defendant *by the plaintiff*; (2) an appreciation or knowledge by the defendant of the benefit; and (3) acceptance or retention by the defendant under the circumstances would be inequitable without payment of its value. *See Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*, 552 F.3d 47, 57 (1st Cir. 2009) (emphasis added). Thus, in *Blake v. Prof'l Coin Grading Serv.*, 898 F. Supp. 2d 365, 390-91 (D. Mass. 2012), this Court dismissed an unjust enrichment claim because the plaintiff did not allege that he conferred the benefit of confidential information on the defendant; instead, he alleged that the defendant obtained the information through a third-party, who, in turn, obtained the information from him. Here, Plaintiffs essentially allege that they shared "Confidential Information" with Dr. Zhang during her employment, and later on, MtoZ obtained such information through Dr. Zhang. Timeline-wise, it would have been impossible for Plaintiffs to confer any "Confidential Information" directly to MtoZ, as Dr. Zhang's employment with Abace ended on May 1, 2017, and MtoZ was established four months later. (Complaint, ¶¶38, 46). Insofar as Plaintiffs do not allege that they conferred benefit on MtoZ, this count must fail.

In the alternative, to the extent Plaintiffs pursue this count on the ground that MtoZ allegedly used their "Confidential Information," this claim is duplicative of Plaintiffs' trade secret misappropriation claim. Because Plaintiffs essentially allege the same facts under both counts, this unjust enrichment claim is derivative of the trade secret claim and must be dismissed. *See Pauwels v. Deloitte LLP*, No.19-CV-02313 (RA), 2020 U.S. Dist. LEXIS 28736, *42 (S.D.N.Y. Feb. 19, 2020) (dismissing unjust enrichment claim that was duplicative of plaintiff's trade secret misappropriation claim).

Finally, unjust enrichment is an equitable remedy, which exists only to supplement remedies available at law and serves as an equitable stopgap for occasional inadequacies in contractual remedies at law. *See Tomasella v. Nestle USA, Inc.*, 962 F.3d 60, 82 (1st Cir. 2020). Plaintiffs raise various statutory and common law claims against MtoZ. This, too, prohibits Plaintiffs from proceeding with this Count.

### F.     Plaintiffs' Civil Conspiracy Claim Against MtoZ Fails As A Matter Of Law

In their Sixth Count, Plaintiffs allege MtoZ engaged in a civil conspiracy. Like the preceding claims, this count too must fail as matter of law.

In order to proceed with a civil conspiracy claim in Massachusetts, a plaintiff must allege that the defendants engaged in a common scheme or plan to commit tortious conduct. S*ee Bartle v. Berry*, 80 Mass. App. Ct. 372, 383-84 (2011). As discussed above, Dr. Zhang's purported offense was to breach alleged employment agreements with Plaintiffs. Failure to perform a contractual obligation, however, is not tantamount to a tort. *See Anderson v. Fox Hill Village Homeowners Corp.*, 424 Mass. 365, 369 (1997). Therefore, no actionable conspiracy was formed under Massachusetts law because the purported principal party to the alleged conspiracy, Dr. Zhang, did not commit an underlying tort. *See Blake v. Prof'l Coin Grading Serv.*, 898 F. Supp. 2d 365, 391-393 (D. Mass. 2012); *Gillette Co. v. Provost*, Nos. 136751, 1584 CV 00149-BLS2, 2017 Mass. Super. LEXIS 38, *14-*16 (Suffolk April 18, 2017). The Court should therefore dismiss this count as well.

### G.     Plaintiffs' Conversion Claim Against MtoZ Fails As A Matter Of Law

Plaintiffs' conversion claim in the Seventh Count also fails as a matter of law. It is well settled under Massachusetts law that a conversion claim is viable only in cases involving tangible chattels. *See Harvard Apparatus, Inc. v. Cowen,* 130 F. Supp. 2d 161, 164 (D. Mass. 2001). This

Court has consistently held that a plaintiff is not entitled to recover for conversion of intangible property. *See In re TJX Cos. Retail Sec. Breach Litig.*, 527 F. Supp. 2d 209, 212-13 (D. Mass. 2007), *aff'd in part, vacated in part on other grounds*, 564 F.3d 489 (1st Cir. 2009); *Portfolioscope, Inc. v. I-Flex Solutions Ltd.*, 473 F. Supp. 2d 252, 256 (D. Mass. 2007) (noting that conversion and replevin claims "require an allegation of wrongful possession of *tangible* property") (emphasis supplied). Accordingly, in *Blake,* 898 F. Supp. 2d at 386 , the court dismissed a claim for conversion of trade secrets on the ground that intellectual property is not tangible property. *See also Jayson Assocs., Inc. v. United Parcel Serv. Co.*, No. 04-10771-RWZ, 2004 U.S. Dist. LEXIS 13191, *4 (D. Mass. July 15, 2004) ("[The defendant] properly asserts that a cause of action for conversion . . . does not apply to intangible items."). This count should therefore be dismissed as well.

### H. Plaintiffs' 93A Claim Against MtoZ Fails As A Matter Of Law

Plaintiffs' Eighth Count for violation of Chapter 93A is also fatally defective. In it, Plaintiffs contend that "MtoZ and IgClue, through Zhang, established themselves without disclosing same to Plaintiffs," (Complaint, ¶112), suggesting that MtoZ had some obligation to do so. Plaintiffs also nakedly assert without any supporting factual information that MtoZ took data from Plaintiffs' computers" or "accessed or attempted to access Plaintiffs' computers...." (Complaint, ¶¶112, 113). Plaintiffs do not state when or where these acts took place.

As to the first assertion, Massachusetts courts have repeatedly held that a former employer cannot invoke Chapter 93A to impose liability based on a non-compete claim. *See Advanced Micro Devices, Inc. v. Feldstein*, 951 F. Supp.2d 212, 216 (D. Mass. 2013); *TalentBurst, Inc. v. Collabera, Inc.*, 567 F. Supp.2d 261, 270-71 (D. Mass. 2008). *See also Commercial Union Ins. Co. v. Seven Provinces Ins. Co.*, 217 F.3d 33, 40 (1st Cir. 2000). To the

14

extent Plaintiffs' allegations under this Count rest on their non-compete claims, they should be dismissed. Moreover with respect to the suggestion that MtoZ had an obligation under Massachusetts law to inform or get approval from Plaintiffs that it was setting up business, MtoZ could find no Massachusetts case to support that proposition. To impose such a requirement on a company, even one that was formed by a former employee, is anathema to fair business competition, and is certainly not required under Massachusetts law. *See generally TalentBurst*, 567 F. Supp. 2d at 270-71 (even where a third party actually facilitates a breach of non-compete, not actionable under Chapter 93A). Were it otherwise, a business enterprise could broadly prevent any new competition by a start-up company with which a former employee was affiliated. Chapter 93A was not designed to castrate competition that way. *See generally Nat'l Econ. Research Assocs., Inc. v. Evans,* 2008 Mass Super. LEXIS 294, *40-*41 (Suffolk Sept. 9, 2008) (court notes concern about excessive application of statute in employment circumstances given its harsh penalties).

Regarding Plaintiffs' charge that MtoZ "accessed or attempted to access Plaintiffs' computers...," (Complaint, ¶115), Plaintiffs offer no facts whatsoever to support that accusation. Such a bald assertion, without more, is insufficient to sustain a claim under Chapter 93A. Moreover, as the claim arises in connection with information Dr. Zhang had as an employee of Abace, this aspect of Plaintiffs' 93A claim misses the mark as well. *See Feldstein*, 915 F. Supp. 2d 216.

Plaintiffs finally contend under this count that MtoZ "used Zhang's knowledge to their benefit.... " (Complaint, ¶115). Given the complete absence of any factual detail to buttress this allegation, it would appear plainly to rest on the premise that Dr. Zhang was in breach of an agreement not to compete against Abace by sharing information with MtoZ. As noted above,

Massachusetts law is crystal clear that allegations arising from breach of non-compete agreements do not fall within the scope of Chapter 93A. Accordingly, this count fails as a matter of law as well and should be dismissed.

### I. Plaintiffs' Trade Secrets Act Claim Against MtoZ Fails As A Matter Of Law

Plaintiffs' Ninth Count, a cause of action based on 18 U.S.C. §1832, cannot proceed as well. As this Court noted in *Harvard Apparatus, Inc. v. Cowen,* 130 F. Supp. 2d 161, 164 (D. Mass. 2001), Section 1832 of the Trade Secrets Act is a criminal statute. It does not permit a private party to use the statute to seek damages. *See Steves & Sons, Inc. v. Jen-Weld, Inc.*, 271 F. Supp. 3d 835, 842-43 ( E.D. Va. 2017). Accordingly, Plaintiffs cannot recover under it.

### J. Alternatively, The Court May Stay This Case Pending Resolution Of The China Litigation

As noted above, Abace has filed a nearly identical action against Dr. Zhang in China.[9] Though Abace commenced the China litigation subsequent to this case, the resolution of that proceeding might be instructive to the resolution of this litigation. After all, the elemental documents in dispute here are in Chinese, the provisions of them purport to be governed by Chinese law, the central players in this matter are Chinese citizens, and Dr. Zhang has been served with process there. (MtoZ acknowledges, however, that it is not a party to that case.)

It is well established that this Court has "broad discretion to stay proceedings as an incident to its power to control its own docket." *Cannon v. Aetna Life Ins. Co.*, Civil Action No. 14-12546-DJC, 2015 U.S. Dist. LEXIS 78512, at *11 (D. Mass. June 17, 2015) (quoting *Clinton*

---

[9] Federal courts may take judicial notice of proceedings in other courts if those proceedings have relevance to the matter at hand. *See Maher v. Hyde*. 272 F.3d 83, 86 n.3 (1st Cir. 2001) ("It is well-accepted that federal courts may take judicial notice of proceedings in other courts if those proceedings have relevance to the matters at hand."); *see also Chevron Corp. v. Shefftz*, 754 F. Supp. 2d 254, 256 (D. Mass. 2010) (taking judicial notice of the existence of litigation in the Republic of Ecuador). Attached as Exhibit C is a copy of the Complaint filed by Abace in front of the Beijing Tongzhou People's Court in China.

*v. Jones*, 520 U.S. 681 (1997)). This includes "the inherent power to stay an action based on the pendency of a related proceeding in a foreign jurisdiction." *Goldhammer v. Dunkin' Donuts, Inc.*, 59 F. Supp. 2d 248, 251 (D. Mass. 1999). Courts commonly abstain from exercising their juridical powers and stay cases in deference to other matters, even to foreign proceedings, when those proceedings are "instructive on the ultimate resolution" of the stayed case. *See State St. Corp. v. Stati*, 2019 U.S. Dist. LEXIS 141250, *2-*3 (D. Mass. May 22, 2019) (staying an action favoring an UK action); *Tarazi v. Truehope, Inc.*, 958 F. Supp. 2d 428, 435 (S.D.N.Y. 2013) (staying case in favor of Canadian action that was "instructive on the ultimate resolution").

Here, as discussed in detail above, Plaintiffs' claims against the Defendants are premised on allegations that Dr. Zhang breached a non-compete obligation she had with Abace and used Abace's Confidential Information. Both of these underlying claims appear to be governed by Chinese law. The facts and issues to be determined in the Chinese proceedings and those to be decided in this Court are almost identical. Staying this case could preserve judicial resources that would otherwise be needed to resolve issues that might sooner and more expeditiously be determined in the Chinese courts. Staying this case might also have the added benefit of reducing the risk of inconsistent judgments. *See Goldhammer*, 59 F. Supp. 2d at 251.

Dr. Zhang has been served in China. Abace has apparently already submitted evidence to the People's Court in Beijing, China. It may therefore be prudent and serve principles of judicial economy to stay this matter in its current state until the Chinese case concludes. Moreover, the rulings in that case could be instructive on the fundamental issues here regarding the enforceability of the proposed agreements attempting to restrict Dr. Zhang's ability to compete and use or share information she learned while at Abace with MtoZ. Accordingly, MtoZ

proposes that as an alternative to dismissing Plaintiffs' claims at this time, the Court simply stay the case until the resolution of the China litigation.

## V. CONCLUSION

For the many reasons set forth above, Defendant MtoZ respectfully requests that the Court dismiss all causes of actions asserted against it. In the alternative, MtoZ proposes that the Court stay this case until the resolution of the China case.

                Respectfully submitted,

/s/ David P. Shouvlin
David P. Shouvlin (Bar No. 555779)
Porter, Wright, Morris & Arthur LLP
41 South High Street
Columbus, OH 43215-6194
Telephone: (614) 227-2000
Facsimile: (614) 227-2100
Email: dshouvlin@porterwright.com

*Attorney for Defendant MtoZ Bilolabs, Inc.*

## CERTIFICATE OF SERVICE

  The undersigned hereby certifies that on this 29th day of January, 2021, a true copy of the foregoing was served via the Court's CM/ECF system, which will send notification of such filing to all counsel of record.

Edward S. Cheng (Bar No. 634063)
Matthew C. Moschella (Bar No. 653885)
Sherin and Lodgen LLP
101 Federal Street
Boston, MA 02110
(617) 646-2019
escheng@sherin.com
mcmoschella@sherin.com
*Attorneys for Creative Dynamics, Inc. and Beijing Abace Biology Co., Ltd.*


Of Counsel:
Willard C. Shih (pro hac admission pending)
Wilentz, Goldman & Spitzer, P.A.
90 Woodbridge Center Drive, Suite 900
Woodbridge, New Jersey 07095
(732) 855-6016
wshih@wilentz.com

              /s/ David P. Shouvlin
              David P. Shouvlin (Bar No. 555779)

14174621v1