UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CREATIVE DYNAMICS, INC. and ) <br> BEIJING ABACE BIOLOGY CO., LTD., ) <br>   ) <br> Plaintiffs, ) <br>   ) <br> v. ) <br>   ) <br> CHUNHONG ZHANG, MTOZ ) <br> BIOLABS, INC, ABC CORP. 1 d/b/a Ig- ) <br> Clue and IgClue, ABC CORPS. 2-10 and ) <br> JOHN DOES 1-10, ) <br>   ) <br> Defendants. ) | Case No.1:20-CV-11711-DPW <br><br> Judge Woodlock |

**DEFENDANT MtoZ BIOLABS, INC.'S MEMORANDUM
IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

**I.     INTRODUCTION**

This case is, in essence, a non-compete action to suppress competition in Massachusetts resting on unenforceable contracts based on Chinese law, executed in China, between Plaintiff Beijing Abace Biology Co., LTD. ("Abace"), a Chinese company, and a Chinese national, Defendant Chunhong Zhang ("Dr. Zhang"). In 2015, Dr. Zhang, a newly minted Ph.D., began work for Abace in Chengdu, Sichuan, China, as an entry-level employee in Abace's Creative Proteomics Department. Dr. Zhang was required to sign several employment-related documents intended to restrict her employment.[1] One of these documents declines to identify either a time

---

[1] Plaintiffs make reference to those documents in their Amended Complaint, but did not attach them. For convenience, MtoZ submits them with this Motion. Under Fed. R. Civ. P. 12, the Court can consider these documents in ruling on the Motion. *See Miller Inv. Tr. v. Morgan Stanley & Co., LLC*, 308 F. Supp. 3d 411, 425 (D. Mass. 2018); *McGee v. Andre Benjamin 3000*, No. 08-11818-DPW, 2012 U.S. Dist. LEXIS 37210, at *13 (D. Mass. March 20, 2012). The translations of relevant parts were not performed by a professional translator.

period during which Dr. Zhang was not to compete or a reasonable geographic area. Another of these documents purports to prevent Dr. Zhang from working in a position similar to that she held at Abace in China *for a period of five years*. Plaintiffs rely on these extraordinary documents not only to pursue claims against Dr. Zhang, who has not yet been served in this case and thus is not a party to it, but also against MtoZ, a Massachusetts start-up doing business in the same general field as Plaintiffs.

In addition to the non-compete claims against Dr. Zhang, Plaintiffs have asserted various causes of action sounding in the tort of trade secret misappropriation against her and MtoZ. These claims largely rest on naked assertions of misappropriation regarding nebulous "Confidential Information" and various allegations based on "information and belief." None of these allegations has any merit but appear to be brought chiefly for the purpose of intimidating the Defendants into not competing against the Plaintiffs: the Defendants are confronted with the specter of daunting litigation costs they can ill afford to pay.[2] In any event, Plaintiffs' misappropriation-based causes of action are fatally deficient due in part to Plaintiffs' failure to identify the supposed trade secrets the Defendants have allegedly misappropriated. For these and the other reasons set forth below, the Court should dismiss Plaintiffs' claims against MtoZ.

II.     FACTS

The facts set forth below are, for the most part, based on allegations presented in the Amended Complaint ("Am. Comp.") and information from documents to which the Am. Comp.

---

[2] This is not the first time these Plaintiffs have initiated an action in the United States to suppress competition. In 2018, they commenced an action in the U.S. District Court for the Central District of California asserting the same sort of conclusory claims against four Chinese national former employees and several start-up companies located in California and New Jersey. In August 2020, the court denied Plaintiffs' renewed motion for default judgment and dismissed the case without prejudice. *See Beijing Abace Biotechnology Co. v. ADV Biolabs, Inc.*, No. 2:18-cv-3599 FMO -ASx, 2020 U.S. Dist. LEXIS 159403 (C.D. Cal. Aug. 24, 2020).

makes reference. MtoZ does not ascribe to all these facts, and with respect to many of them simply has no knowledge of their truth. But MtoZ understands that at this stage of the proceedings the Court must accept as true Plaintiffs' well-pleaded facts. *See Saccoccia v. United States*, 955 F.3d 171, 172 (1st Cir. 2020).

Plaintiff Abace is a Chinese company with its principal place of business in Beijing, the People's Republic of China ("China"). (Am. Comp. ¶3). Abace states that it is in the business of pharmaceutical and life science research and development services. (Id., ¶1). Specifically, Abace explains it is a service provider in metabolomics, proteomics, antibody and genomics. (Id., ¶¶1, 13-15, 86). Plaintiff Creative Dynamics, Inc. ("Creative Dynamics") is a New York corporation. (Id., ¶2). Plaintiffs state that Creative Dynamics is affiliated with Abace though without identifying the corporate relationships. (Id., ¶¶1, 13). Plaintiffs assert that Abace and Creative Dynamics work hand in hand to provide world-leading pharmaceutical and life science research and development services, with Creative Dynamics based in New York and Abace based in China. (Id., ¶¶1-3, 13).

In December 2014, Dr. Zhang began work with Abace in China. (Id., ¶17). Dr. Zhang was mainly responsible for handling general marketing and assisting in responses to customer inquiries during her employment with Abace. (Id., ¶18). On December 25, 2014, and then again on November 2, 2016, Abace required Dr. Zhang to sign "Confidentiality and Non-Competition Agreements."[3] (Id., ¶24) (referred to hereafter as "the Agreements"). They include an unidentified period of time proscribing Dr. Zhang from competing against Abace. They are also without geographical limits.

---

[3] MtoZ does not have a copy of the December 25, 2014 agreement and therefore only attaches to the Motion the November 2, 2016 agreement, as Exhibit A.

Specifically, Article 3.2 of the November 2, 2016 agreement provides, in relevant part:

> 1. Party B shall not, directly or indirectly, engage in or assist others to engage in the same or similar competitive business as Party A within_____ months of termination (until the next day of the _____ month after termination).
>
> 2. Party B shall not hold a full or part-time job in an organization with similar business and competitive relationship with Party A or accept the employment of an individual with similar business and competitive relationship with Party A within ____ months from the date of termination (until the next day of the ____ month after termination).

Exhibits A, Article 3.2 (spaces in originals).

On January 9, 2016, Abace insisted that Dr. Zhang sign another document, referred to as the "Cadre Agreement."[4] This agreement is attached hereto as Exhibit B. In it Abace seeks to restrict Dr. Zhang from engaging in any competitive business for a period of *five years*. (Am. Comp. ¶¶34-38) (emphasis supplied). Article 4.1 of this document provides, in relevant part:

> All senior cadres (The primary and secondary head of each Division, meaning those leaders with the position higher than the combat team lead) must strictly abide by the principle of non-competition, and may not engage in any competitive relationships with CD Inc. or reemployed by any companies with competitive relationship or have a business conflict with CD, Inc. for *five years* following their termination, without written consent of CD, Inc.

Exhibit B, Article 4.1 (emphasis supplied).

In January 2017, Dr. Zhang became ill and shortly thereafter left her position with Abace. (Am. Comp. ¶¶41-42). Later that year she moved to Massachusetts to join her husband, also a Chinese national, who was visiting the United States as an academic scholar. In September 2017, Dr. Zhang formed MtoZ. The purpose of MtoZ is to establish a contract research organization

---

[4] Abace insisted Dr. Zhang sign two Cadre Agreements during her employment, one on January 9, 2016, as alleged in the Complaint, and again on November 2, 2016, which Plaintiffs do not allege.

providing advanced proteomics, metabolomics, bioinformatics, and biopharmaceutical analysis services to researchers in the biochemistry, biotechnology, and biopharmaceutical fields.[5]

### III. PROCEDURAL HISTORY

Plaintiffs filed their initial Complaint on September 17, 2020. [Dkt. 1]. MtoZ moved to dismiss or stay the Complaint on January 29, 2021. [Dkt. 13]. On March 3, 2021, Plaintiffs filed the Amended Complaint in which they essentially repeated the allegations and claims they presented in the original Complaint, though they dropped the claim for unfair competition, and added a new cause of action (Ninth Count) for tortious interference. [Dkt. 23].

On the heels of commencing this action, Abace filed an arbitration proceeding in China and later a lawsuit against Dr. Zhang in the Peoples Court in Beijing on or about October 19, 2020 ("the China case"), alleging breach of the employment contracts identified above. Pursuing a judicial resolution of the parties' disputes in China made sense inasmuch as the allegations giving rise to this case are based on Chinese contracts likely governed by Chinese law entered into by Chinese citizens: *viz.*, whether Dr. Zhang violated a valid non-compete agreement and misappropriated Abace trade secrets. It was therefore surprising to learn that Abace very recently took a voluntary dismissal without prejudice in the Chinese case, especially given that Abace had apparently submitted evidence in that proceeding. In any event, because Abace has dismissed the China case, MtoZ at this time does not renew its request to stay the instant case.

### IV. STANDARD OF REVIEW

The law governing pleading requirements in the District of Massachusetts is well settled. In order to satisfy them, a plaintiff must set forth factual allegations which, if true, demonstrate that the plaintiff's claims are plausible. *See Gilbert v. City of Chicopee*, 915 F.3d 74, 80 (1st Cir.

---

[5] In 2020, MtoZ suspended its business largely due to the Covid pandemic.

2019); *Miller Inv. Tr. v. Morgan Stanley & Co., LLC*, 308 F. Supp. 3d 411, 425 (D. Mass. 2018). Failure to meet this pleading predicate subjects a plaintiff's claims to dismissal.

As this Court explained in *Bruno Int'l Ltd. v. Vicor Corp.*, No. 14-10037-DPW, 2015 U.S. Dist. LEXIS 123556, *9 (D. Mass. Sept. 16, 2015), "[t]o survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court further explained that where the alleged facts "do not permit the court to infer more than the mere possibility of misconduct," the complaint fails to demonstrate "the pleader is entitled to relief." *Id.*, quoting *Maldonado v. Fontanes*, 568 F.3d 263, 269 (1st Cir. 2009) (internal quotations omitted). Though the court must "accept as true all well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiffs," *Gargano v. Liberty Int'l Underwriters, Inc.*, 572 F.3d 45, 48 (1st Cir. 2009), the court is not required to give deference to vague or conclusory allegations. *Bruno,* 2015 U.S. Dist. LEXIS 123556, at *9. *See also SEC v. Tambone*, 597 F.3d 436, 441 (1st Cir. 2010) (en banc) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). As to allegations advanced on "information and belief," they may be considered—but only to the extent that the information is exclusively in the hands of the defendant, *see Menard v. CSX Transp., Inc.*, 698 F.3d 40, 45 (1st Cir. 2012), which is not the situation here.

**V.     ARGUMENT**

Plaintiffs set forth nine separate causes of action in the Complaint. The First Count and the Second Count are presented against Dr. Zhang alone. She has not been served with process in this case and therefore does not respond to the allegations in the Complaint. The remainder of the

6

counts assert claims against all the Defendants. Insofar as Defendant ABC Corp./IgClue has not been properly served,[6] the arguments below are only those of Defendant MtoZ.

### A. Plaintiffs' Breach Of Contract Claim (Non-Compete Claim) Is Only Against Dr. Zhang

Plaintiffs' non-compete claim set forth in their First Count is asserted only against Dr. Zhang. MtoZ does not move for dismissal of this claim.

### B. Plaintiffs' Breach of Fiduciary Duty Is Only Against Zhang

Likewise, Plaintiffs' Second Count for a breach of fiduciary duty is asserted only against Dr. Zhang. MtoZ does not move for dismissal of this claim either.

### C. Plaintiffs' Misappropriation Of Trade Secrets Claim Against MtoZ Fails As A Matter Of Law

In their Third Count, Plaintiffs contend that MtoZ misappropriated Plaintiffs' trade secrets. Under Massachusetts law, in order to prevail on its misappropriation of trade secrets claim against MtoZ,[7] Plaintiffs must allege: "1) the information is a trade secret; 2) the plaintiff[s] took reasonable steps to preserve the secrecy of the information; and 3) [MtoZ] used improper means, in breach of a confidential relationship, to acquire and use the trade secret." *Incase Inc. v. Timex Corp.*, 488 F.3d 46, 52 (1st Cir. 2007) (emphasis supplied), citing *Data Gen.*

---

[6] The Plaintiffs identify a doe corporate defendant, "ABC Corp." which, Plaintiffs allege, "markets itself as IgClue." Am. Comp. ¶7. According to the Court's docket, Plaintiffs attempted to serve process on it through CT Corp. listing the same address as MtoZ. However, CT Corp. is not the registered agent for that defendant and that defendant is not and has not been a Massachusetts entity, and was not a part of MtoZ. Thus, service has not been properly effected as to it. *See Stratton v. City of Boston*, 731 F. Supp. 42, 45 (D. Mass. 1989) (suggesting that a defendant must be sufficiently identified to permit service of process).

[7] The earliest MtoZ could have possibly misappropriated Plaintiffs' trade secrets was in September 2017, when it was formed. Am. Comp. ¶51. At that time the predecessor to MUTSA, Mass. Gen. Laws ch. 93, §42 (2017), was in effect. *See Allscripts Healthcare, LLC. v. DR/Decision Res., LLC.*, 386 F. Supp. 3d 89, 95 n.3 (D. Mass. 2019).

*Corp.* v. *Grumman Sys. Support Corp.*, 36 F.3d 1147, 1165 (1st Cir. 1994). Because Plaintiffs' allegations do not meet this test, this Count must fail.

To begin, Plaintiffs decline to pinpoint when MtoZ first allegedly misappropriated their trade secrets. The timing is important given the recent changes in Massachusetts law on this subject. The Massachusetts Uniform Trade Secret Act ("MUTSA"), Mass. Gen. Laws ch. 93, §42, applies if the misappropriation occurred after October 1, 2018; if before, it does not. *See Amgen USA, Inc. v. Karyopharm Therapeutics, Inc.*, No. SUCV2018-03970-BLS1, 2019 Mass. Super. LEXIS 397, *6 (Suffolk June 12, 2019). Given that MtoZ was not formed until September 27, 2017, it seems likely that the allegations Plaintiffs set forth against MtoZ deal with conduct governed by MUTSA. Assuming that is correct, Plaintiffs allegations of misappropriation against MtoZ are clearly deficient. Plaintiffs do not identify with any degree of specificity the trade secrets MtoZ allegedly misappropriated, contrary to the requirements set forth in §42(D)(b):

> (b) In an action under sections 42 to 42G, inclusive, in alleging trade secrets misappropriation a party must state *with reasonable particularity* the circumstances thereof, including the nature of the trade secrets and the basis for their protection. Before commencing discovery relating to an alleged trade secret, the party alleging misappropriation shall identify the trade secret with sufficient particularity under the circumstances of the case to allow the court to determine the appropriate parameters of discovery and to enable reasonably other parties to prepare their defense.

Mass. Gen. Laws ch. 93, §42(D)(b)(emphasis supplied).

Though courts have generally held that it is not necessary for plaintiffs to go into exhaustive detail identifying the purportedly purloined trade secrets, plaintiffs must nonetheless provide a meaningful description of the trade secrets and how they give value to the plaintiff in order to proceed with a misappropriation claim. On this point §42(D)(b) is consonant with earlier Massachusetts law. S*ee Ferring Pharms., Inc. v. Braintree Labs., Inc.*, 38 F. Supp. 3d 169, 175 (D. Mass. 2014), citing *Sutra, Inc. v. Iceland Express EHF,* No. 04-13360-DPW, 2008 U.S. Dist.

LEXIS 52849, *9-*10 (D. Mass. July 10, 2008) ("description far too open textured to meet the test for an identifiable trade secret"). Without such information, a defendant has no reasonable idea as to what it is accused of taking. It is not fair to require a defendant in that instance to have to suffer the costs of discovery to identify this basic fact.

Here, Plaintiffs allege on "information and belief" that MtoZ misappropriated their "Confidential Information." (Am. Comp. ¶¶ 70-71, 95-97). In attempting to put some context on what that means, Plaintiffs refer to Confidentiality and Non-Competition Agreements—not attached to the Amended Complaint—that employ the term "Business Secrets" to cover an extraordinarily broad range of "any technical or operational information which are unknown to the public and which may generate economic benefit for [Abace] and any/or any Third Party...." (Am. Comp. ¶31; see also Id., footnote 1). (The November 2, 2016 agreement to which Plaintiffs refer is attached hereto as Exhibit A.) Because Plaintiffs too grandly define their trade secrets or "Confidential Information" to include virtually every aspect of their business, the concept becomes meaningless. *See TLS Mgmt. & Mktg. Servs., LLC v. Rodriguez-Toledo*, 966 F.3d 46, 54-55 (1st Cir. 2020); *Sutra*, 2008 U.S. Dist. LEXIS 52849, *9-*10. As a result, the Court and MtoZ are left to ask, exactly what trade secrets is MtoZ accused of using? Neither the Court nor MtoZ should have to guess what MtoZ must defend against. Plaintiffs' broad assertions of trade secret misappropriation thus do not meet basic pleading requirements. Adding to this the fact that Plaintiffs' allegations of misappropriation are almost exclusively based on information and belief and not actual specific facts, the Court should dismiss the misappropriation claim for this reason alone. *See Ferring Pharms*., 38 F. Supp. 3d at 175.

Plaintiffs do at one point attempt to delineate what "confidential information" may include: "customer identities and customer pricing which it specifically negotiates, Plaintiffs'

supplier list and its (sic) negotiated prices with suppliers, Plaintiffs' purchasing patterns, and Plaintiffs' customer reports; Zhang's work product, including the reports she prepared, is also confidential...." (Am. Comp. ¶19; ¶¶29-31.) But stating that such information represents trade secrets does not automatically make it so. First, with respect to pricing data, Plaintiffs make no allegation that MtoZ actually used such information to formulate its pricing structures. This alone undermines Plaintiffs' claim. Even assuming *arguendo* that such pricing information represents a trade secret, MtoZ's simple possession of it is not actionable. As the court explained in *EchoMail, Inc. v. Am. Exp. Co.*, 378 F. Supp. 2d 1, 2-3 (D. Mass. 2005), a third party defendant must "actually use[ ] the trade secrets" in order to be liable. Further, any pricing data MtoZ possessed was dated (circa 2016), and it is well understood that stale pricing data typically cannot constitute a trade secret as it brings little or no value to a plaintiff. *See E. Bag & Paper Co. v. Ross*, 2007 Mass. App. LEXIS1405, *13-*14 (Aug. 13, 2007). *See also CH Bus Sales, Inc. v. Geiger,* No. 18-cv-2444 (SRN/KMM), 2019 U.S. Dist. LEXIS 46093, *22-*30 (D. Minn. Mar. 20, 2019); *WEG Elec. Corp. v. Pethers*, No. 16-cv-471, 2016 U.S. Dist. LEXIS 49208, *7 (D. Minn. April 12, 2016) (pricing information four to twenty-four months old had minimal economic value to merit trade secret status). For these reasons, the suggestion that MtoZ misappropriated Plaintiffs' trade secrets because it allegedly possessed pricing information cannot succeed. Regarding Plaintiffs' purported confidential customer information, Plaintiffs' allegations in the Amended Complaint target MtoZ's internet marketing; there is no allegation that MtoZ used Plaintiffs' customer information to reach out directly to any Plaintiffs' customers. Thus, there is no actual allegation that MtoZ used any of Plaintiffs' customer information, whether secret or not, which fatally undercuts this cause of action against MtoZ. *See E. Bag & Paper*, 2007 Mass. App. LEXIS1405, at *12-*13.

Plaintiffs also appear to allege that MtoZ is misappropriating Plaintiffs' trade secrets by operating a website that is "similar to Plaintiffs' website and offer[s] many of the same services." (Am. Comp. ¶55; see also ¶98.) In a series of paragraphs, Plaintiffs identify various services they offer on their website, and then note MtoZ offers similar services. (Am. Comp. ¶¶56-69.) The inference is clear: because MtoZ offers similar services, it must be using Plaintiffs' trade secrets. But the syllogism is flawed, for two reasons. First, identifying these services on their website compromises Plaintiffs' argument that the identity of those services is somehow trade secret: publishing those services makes their identity public information which of course cannot be a trade *secret*. Thus, to the extent MtoZ offers similar or identical services cannot comprise a misappropriation of trade secrets. *See TLS*, 966 F.3d at 54. Second, simply because MtoZ offers such services does not mean it is using any of Plaintiffs' Confidential Information, whether that information is trade secret or not. Such an assumption cannot serve as the foundation for a misappropriation claim. *Cf. Corporate Techs, Inc. v. Harnett,* 731 F.3d 6, 14 (1st Cir. 2013) (Massachusetts courts "sparingly use[]" the "inevitable disclosure doctrine" where employees leave employers to compete without evidence of actual use of trade secrets). Otherwise, any time a former employee starts up a business that operates in a similar manner to the former employer, the former employer could impermissibly frustrate competition by making such a claim. In sum, Plaintiffs' various allegations are separately and collectively insufficient to make out a misappropriation claim.

### D.   Plaintiffs' Unjust Enrichment Claim Against MtoZ Fails As A Matter Of Law

Plaintiffs' Fourth Count for unjust enrichment against MtoZ is insufficient for the following reasons. First, Plaintiffs do not allege or set forth facts supporting the proposition that they conferred benefits on MtoZ. Second, this claim is preempted by or duplicative of the trade

secret claim. Third, a claim for unjust enrichment is an equitable remedy and is only proper when there exists no adequate remedy at law.

Massachusetts law makes clear that in order to prevail on unjust enrichment, a plaintiff must set forth the following elements: (1) a benefit conferred upon the defendant *by the plaintiff*; (2) an appreciation or knowledge by the defendant of the benefit; and (3) acceptance or retention by the defendant of the benefit under the circumstances would be inequitable without payment for its value. *See Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*, 552 F.3d 47, 57 (1st Cir. 2009) (emphasis added). Thus, in *Blake v. Prof'l Coin Grading Serv.*, 898 F. Supp. 2d 365, 390-91 (D. Mass. 2012), this Court dismissed an unjust enrichment claim when the plaintiff did not allege that he conferred the benefit of confidential information directly on the defendant; instead, he alleged the defendant obtained the information through a third-party, who, in turn, obtained the information from him. In rejecting the unjust enrichment claim, the Court distinguished it from a claim for misappropriation of trade secrets, noting that unjust enrichment is not an available remedy against third parties that never had a quasi-contractual relationship with a plaintiff. *Id.*, at 390-91.

Here, Plaintiffs essentially allege that they shared "Confidential Information" with Dr. Zhang during her employment, and later on Dr. Zhang shared that information with MtoZ . Timeline-wise, it would have been impossible for Plaintiffs to confer any "Confidential Information" directly to MtoZ, as Dr. Zhang's employment with Abace ended on May 1, 2017, and MtoZ was established months later. (Am. Comp. ¶¶42, 51). Moreover, Plaintiffs do not allege that there existed any quasi-contractual relationship between them and MtoZ. Thus, inasmuch as Plaintiffs do not allege that they conferred benefit on MtoZ, this count must fail.

In addition, to the extent Plaintiffs pursue this count on the ground that MtoZ allegedly used their "Confidential Information," it is derivative of Plaintiffs' trade secret misappropriation claim and must be dismissed. *See Pauwels v. Deloitte LLP*, No.19-CV-02313 (RA), 2020 U.S. Dist. LEXIS 28736, *42 (S.D.N.Y. Feb. 19, 2020) (dismissing unjust enrichment claim that was duplicative of plaintiff's trade secret misappropriation claim).

Finally, unjust enrichment is an equitable remedy, which exists only to supplement remedies available at law and serves as an equitable stopgap for occasional inadequacies in contractual remedies at law. *See Tomasella v. Nestlé USA, Inc.*, 962 F.3d 60, 82-84 (1st Cir. 2020) (affirming dismissal of unjust enrichment claim because plaintiff had adequate remedy at law through the Chapter 93A claim). Plaintiffs raise various statutory and common law claims against MtoZ. This, too, prohibits Plaintiffs from proceeding with this Count.

### E. Plaintiffs' Civil Conspiracy Claim Against MtoZ Fails As A Matter Of Law

In their Fifth Count, Plaintiffs allege MtoZ engaged in a civil conspiracy. Like the preceding claims, this Count too must fail as matter of law.

In order to proceed with a civil conspiracy claim in Massachusetts, a plaintiff must allege that two or more persons engaged in a common scheme or plan to commit tortious conduct. S*ee Bartle v. Berry*, 80 Mass. App. Ct. 372, 383-84 (2011). First, conspiracy requires more than one actor. A company cannot "conspire" with itself, or with its officers, insofar as the officers are acting for the company. *See Hagenah v. Berkshire Cty. Arc, Inc.*, No. 3:16-cv-30141-KAR, 2018 U.S. Dist. LEXIS 24696, *21-26 (D. Mass. Feb. 15, 2018) (dismissing civil conspiracy claim because plaintiff failed to allege that any of the individual defendants acted outside the scope of their employment). To hold otherwise would mean that every wrongful act by an officer gives rise to conspiracy liability on the company. *See Wentworth Precious Metals, LLC v. City of*

13

*Everett*, No. 11-10909-DPW, 2013 U.S. Dist. LEXIS 14718, *14 (D. Mass. Feb. 4, 2013). Here, both Dr. Zhang and Ms. Li are identified as officers of MtoZ. (Am. Comp. ¶¶51-52, 102). Plaintiffs simply fail to allege that Dr. Zhang or Ms. Li acted outside their duties as officers when they allegedly conspired with MtoZ. Plaintiffs also fail to set forth any fact supporting the proposition that MtoZ and IgClue conspired together. This alone is sufficient for the Court to dismiss this claim.

Second, Plaintiffs' civil conspiracy claim essentially hinges on allegations that Dr. Zhang' breached employment agreements with Plaintiffs. Failure to perform a contractual obligation, however, is not tantamount to a tort. *See Anderson v. Fox Hill Village Homeowners Corp.*, 424 Mass. 365, 369 (1997). Therefore, no actionable conspiracy was formed under Massachusetts law because the purported principal party to the alleged conspiracy, Dr. Zhang, did not commit an underlying tort. *See Blake v. Prof'l Coin Grading Serv.*, 898 F. Supp. 2d 365, 391-393 (D. Mass. 2012); *Gillette Co. v. Provost*, Nos. 136751, 1584 CV 00149-BLS2, 2017 Mass. Super. LEXIS 38, *14-*16 (Mass. Super. Ct. April 18, 2017). The Court should therefore dismiss this count as well.

   **F.**  **Plaintiffs' Conversion Claim Against MtoZ Fails As A Matter Of Law**

Plaintiffs' conversion claim in the Sixth Count also fails as a matter of law. It is well settled under Massachusetts law that a conversion claim is viable only in cases involving tangible chattels. *See Harvard Apparatus, Inc. v. Cowen,* 130 F. Supp. 2d 161, 164 (D. Mass. 2001). This Court has consistently held that a plaintiff is not entitled to recover for conversion of intangible property. *See In re TJX Cos. Retail Sec. Breach Litig.*, 527 F. Supp. 2d 209, 212-13 (D. Mass. 2007), *aff'd in part, vacated in part on other grounds*, 564 F.3d 489 (1st Cir. 2009); *Portfolioscope, Inc. v. I-Flex Solutions Ltd.*, 473 F. Supp. 2d 252, 256 (D. Mass.

2007) (noting that conversion and replevin claims "require an allegation of wrongful possession of *tangible* property") (emphasis supplied). Accordingly, in *Blake,* 898 F. Supp. 2d at 386 , the court dismissed a claim for conversion of trade secrets on the ground that intellectual property is not tangible property. *See also Jayson Assocs., Inc. v. United Parcel Serv. Co.*, No. 04-10771-RWZ, 2004 U.S. Dist. LEXIS 13191, *4 (D. Mass. July 15, 2004) ("[The defendant] properly asserts that a cause of action for conversion . . . does not apply to intangible items."). This count should therefore be dismissed as well.

      **G.**      **Plaintiffs' 93A Claim Against MtoZ Fails As A Matter Of Law**

Plaintiffs' Seventh Count for violation of Chapter 93A is also fatally defective. In it, Plaintiffs nakedly assert without any supporting factual information that MtoZ "improperly obtained and used Zhang's knowledge to their benefits" which they allege constitutes unfair competition and unfair or deceptive acts or practice under the Massachusetts Consumer Protection Act. (Am. Comp. ¶115.) Given the complete absence of any factual detail to buttress this allegation, it would appear to rest largely on the premise that Dr. Zhang was in breach of an agreement not to compete against Abace by sharing information with MtoZ.

Massachusetts courts have repeatedly held that a former employer cannot invoke Chapter 93A to impose liability based on a non-compete claim. *See Advanced Micro Devices, Inc. v. Feldstein*, 951 F. Supp. 2d 212, 216 (D. Mass. 2013); *TalentBurst, Inc. v. Collabera, Inc.*, 567 F. Supp. 2d 261, 270-71 (D. Mass. 2008); *Ligotti v. Daly XXL Communs., Inc*., No. 16-cv-11522-MLW, 2018 U.S. Dist. LEXIS 225729, *23-*24 (D. Mass. March 26, 2018). *See also Commercial Union Ins. Co. v. Seven Provinces Ins. Co*., 217 F.3d 33, 40 (1st Cir. 2000); *Armstrong v. Rohm & Haas Co.*, 349 F. Supp. 2d 71, 83-84 (D. Mass. 2004) (93A claims do not "apply to post-employment violations by employee of provisions contained in a confidentiality

15

agreement entered into with his employer during his employment", citing *Informix, Inc. v. Rennell*, 41 Mass. App. Ct. 161, 163-64 (1996)). To the extent Plaintiffs' allegations under this Count rest on their non-compete claims, the Court should dismiss it.

Plaintiffs also charge that MtoZ "improperly obtained and used Zhang's knowledge to [its] benefit ... including Plaintiffs' Confidential Information...." (Am. Comp. ¶115.) But as the court in *Feldstein,* 951 F. Supp. 2d at 216, correctly discerned, where a defendant's purported misappropriation rests on an employment relationship with the plaintiffs, the claim is not subject to Chapter 93A treatment. Here, there is no allegation that MtoZ obtained Plaintiffs' trade secrets through some other vehicle except Dr. Zhang's employment relationship with Abace. For this reason as well, Plaintiffs cannot proceed with their Chapter 93A claim against MtoZ.

Finally, this Count is also fatally defective for the many reasons Plaintiffs' trade secret misappropriation count fails. It is well settled that factually unsupported allegations cannot satisfy the pleading requirements predicate to making a 93A claim. *See Morris v. BAC Home Loan Servicing, L.P.*, 775 F. Supp. 2d 255, 263 (D. Mass. 2011).

## H. Plaintiffs' DTSA Claim Against MtoZ Fails As A Matter Of Law

Plaintiffs' Eighth Count, a cause of action based on the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. §1832, *et. seq*., cannot proceed either. As this Court noted in *Harvard Apparatus, Inc. v. Cowen,* 130 F. Supp. 2d 161, 164 (D. Mass. 2001), §1832 of DTSA is a criminal statute. It does not permit a private party to use the statute to seek damages. *See also Steves & Sons, Inc. v. Jen-Weld, Inc.*, 271 F. Supp. 3d 835, 842-43 (E.D. Va. 2017). Plaintiffs had an opportunity to correct this mistake in their Amended Complaint but declined to do so. Compliance with *Twombly/Iqbal* requires parties to identify accurately the statutes under which they are proceeding; Plaintiffs' repeated failure to do so regarding this count merits dismissal.

Assuming only for the sake of discussion that Plaintiffs have adequately identified the statutory grounds for their claim under this count, the claim nonetheless fails. As Massachusetts courts have concluded, the DTSA is functionally identical to MUTSA. *See, e.g.*, *Netcracker*, 2020 U.S. Dist. LEXIS 20610, at *6. As explained in section C above, Plaintiffs have failed to meet their pleading burdens under MUTSA. So it holds that Plaintiffs likewise have failed to meet the pleading requirements under DTSA. For this reason as well, the Court should dismiss this count.

### I.     Plaintiffs' Tortious Interference Claim Fails As A Matter Of Law

Plaintiff's Ninth Count for tortious interference fails for reasons similar to those above. Simply stated, Plaintiffs have not alleged facts that meet the elements of tortious interference under Massachusetts law.

Massachusetts does acknowledge that a party who induces an employee to violate an enforceable non-compete agreement may be liable for tortious interference. *See, e.g.*, *inVentiv Health Consulting, Inc. v. Equitas Life Sciences*, 289 F. Supp. 3d 272, 283-84 (D. Mass. 2017). But to proceed with such a claim, a plaintiff must allege facts that meet the following elements: "(1) [plaintiffs had] a contract with a third party; (2) the defendant knowingly induced the third party to break that contract; (3) the defendant's interference, in addition to being intentional, was improper in motive or means; and (4) [plaintiffs were] harmed by the defendant's actions." *NuVvasive, Inc. v. Day*, Nos. 19-cv-10800, 19-cv-10995, 2021 U.S. District LEXIS 30165, *17 (D. Mass. Feb. 18, 2021).

Here Plaintiffs have failed to meet the pertinent pleading requirements in two respects. First, Plaintiffs have not alleged that MtoZ *induced* Dr. Zhang to break a non-compete agreement, but only that MtoZ hired her. That is insufficient under Massachusetts law: a

defendant is not liable for simply hiring the employee, but must have taken steps to solicit the employee to breach the employee's non-compete agreement. *See TalentBurst, Inc. v. Collabera, Inc.*, 567 F. Supp. 2d 269 (D. Mass. 2008). When the employee had already decided to breach the non-compete agreement before the defendant offered employment, the element of inducement is missing – as here where Plaintiffs allege only that MtoZ hired Dr. Zhang. (Am. Comp. ¶128). *See Perishables by Air, Inc. v Oceanair, Inc.*, 2007 Mass. App. Unpub. LEXIS 724, *13 (March 5, 2007) (senior management person *sought out* employment with defendant—no tortious interference).

Moreover, Plaintiffs' claim is logically unsound. Plaintiffs allege that Dr. Zhang formed MtoZ after she terminated her employment with Abace for the purpose of competing against Plaintiffs. It was therefore logically impossible for MtoZ to induce Dr. Zhang to breach her non-compete when she had, according to Plaintiffs, already decided to do so and formed MtoZ to carry it out.

Finally, Massachusetts law requires there to be a valid non-compete agreement in the first instance to be breached. It is well established under Massachusetts law that "[p]rotection of the employer from ordinary competition . . . is not a legitimate business interest, and a covenant not to compete designed solely for that purpose will not be enforced." *Robert Half Int'l v. Simon*, 2020 Mass. Super. LEXIS 27, *9 (Mass. Super. Ct. Jan. 29, 2020), quoting *Marine Contractors, Inc. v. Hurley*, 365 Mass. 280, 287-88 (1974). As referenced above, the contracts upon which Plaintiffs rest their non-compete claims are plainly designed to prevent Dr. Zhang from using her skills to compete against Plaintiffs and therefore are unenforceable under Massachusetts law. *See* Mass. Gen. Laws ch. 149, §24L. S*ee also Automile Holdings, LLC v. McGovern*, 483 Mass. 797, 808-09 (2020). First, the contracts are uncertain with respect to time (as in, the time period is

18

blank in one contract), *see Primarque Prods. Co. v. Williams West & Witts Prods. Co.*, 303 F. Supp. 3d 188, 206-208 (D. Mass 2018), or are too long (five years in the other instance). Mass. Gen. Laws ch. 149, §24L(b)(iv) (generally restricts time limits from 12 to 24 months). Second, they are too broad in geographic scope (global). *See Edwards v. Athena Capital Advisors, Inc.*, 2007 Mass. Super. LEXIS 378, *9 (Mass. Super. Ct. Aug. 9, 2007) (restricting employee from employment in his line of work "throughout the world" not enforceable); Mass Gen. Laws ch. 42L(b)(v).

For these reasons, Plaintiffs' tortious interference claim also fails as a matter of law.

## VI.   CONCLUSION

For the many reasons set forth above, Defendant MtoZ respectfully requests that the Court dismiss all causes of actions asserted against it.

Respectfully submitted,

/s/ David P. Shouvlin
David P. Shouvlin (BBO No. 555779)
Porter, Wright, Morris & Arthur LLP
41 South High Street
Columbus, OH 43215-6194
Telephone:  (614) 227-2000
Facsimile:  (614) 227-2100
Email:  dshouvlin@porterwright.com

*Attorney for Defendant MtoZ Bilolabs, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 26th day of March, 2021, a true copy of the foregoing was served via the Court's CM/ECF system, which will send notification of such filing to all counsel of record.

Edward S. Cheng (Bar No. 634063)
Matthew C. Moschella (Bar No. 653885)
Sherin and Lodgen LLP
101 Federal Street
Boston, MA 02110
(617) 646-2019
escheng@sherin.com
mcmoschella@sherin.com
*Attorneys for Creative Dynamics, Inc. and Beijing Abace Biology Co., Ltd.*

Of Counsel:
Willard C. Shih (Pro Hac Vice)
Wilentz, Goldman & Spitzer, P.A.
90 Woodbridge Center Drive, Suite 900
Woodbridge, New Jersey 07095
(732) 855-6016
wshih@wilentz.com

      /s/ David P. Shouvlin
      David P. Shouvlin (BBO No. 555779)

14323014v1